```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA

                              CASE NO. 09-Cv-22374-Middlebrooks
                                   (07-Cr-20252-Middlebrooks)
                              MAGISTRATE JUDGE P. A. WHITE
EDGAR MARTINEZ,           :

          Movant,         :       REPORT OF
                                  MAGISTRATE JUDGE
v.                        :

UNITED STATES OF AMERICA, :

     Respondent.          :
_____
```

<u>Introduction</u>

This matter is before the Court on the movant's motion to vacate pursuant to 28 U.S.C. §2255, attacking his conviction and sentence for conspiracy to possess with intent to distribute five kilograms or more of cocaine and attempting to possess with intent to distribute five kilograms or more of cocaine, entered following a jury verdict in criminal case no. 07-Cr-20252-Middlebrooks.

The Court has reviewed the motion (Cv-DE#1), the government's response (Cv-DE#8),the Presentence Investigation Report (PSI) and all pertinent portions of the underlying criminal file.

Construing the movant's arguments liberally as afforded <u>pro se</u> litigants pursuant to <u>Haines v. Kerner</u>, 404 U.S. 419 (1972), the movant appears to raise the following claims in his §2255 motion:

   1.   The movant was denied effective assistance of
        counsel when his attorney failed to aggressively
        object to the trial court's refusal to sever trial
        and allow for exculpatory testimony by a co-

defendant. (Cv-DE#1:4).

2.     Whether the trial court erred when it denied the
       movant's motion to sever trial, thus not allowing
       exculpatory evidence by his co-defendant. (Cv-
       DE#1:4).

<u>Factual History</u>[1]

In March 2007, Drug Enforcement Agents (DEA) from High
Intensity Drug Trafficking Area (HIDTA) received information from
a confidential source (CS) about a mid-level drug trafficker
operating in South Florida with connections to Texas and Mexico.

On March 25, 2007, the CS received a telephone call from an
unidentified male known as "Jimmy" or "Meme." During the
conversation, the CS and "Jimmy" negotiated the purchase and
delivery of 12 kilograms of cocaine for $12,500 per kilogram. The
CS was advised that an individual named Roman Valadez, who was
known as "Palillo," would be driving to the Miami, Florida area to
purchase 12 kilograms of cocaine on behalf of "Jimmy." On March 25,
2007, the CS reported to the agents that he had spoken to Valadez
to begin the negotiation of the sale of 12 kilograms of cocaine.

On March 26, 2007, DEA agents met with the CS to provide him
with an audio recording device. Afterwards, the agents established
surveillance of the La Carretta Restaurant located at 10633 N.W.
12th Street, Miami, Florida.

The CS arrived at La Carretta Restaurant shortly thereafter,

---

[1]The factual history was adduced from the "Offense Conduct" portion of
the PSI.

Valadez, contacted the CS by cellular telephone that he would be driving a white Ford Expedition with a trailer attached to the vehicle. Valadez arrived at the scene and exited his Ford Expedition vehicle to meet with the CS outside the dining area of La Carretta Restaurant. It was discussed by Valadez that "Jimmy" instructed him to first pick up the 12 kilograms of cocaine and then pay the CS after he sold the 12 kilograms. However, the CS explained to Valadez that was not the arrangement he made with "Jimmy." It was then agreed by the CS, Jimmy, and Valadez that Valadez would deliver the money to pay the CS for five kilograms of cocaine. The CS would then give an additional five kilograms of cocaine to Valadez on credit. During the negotiations, Valadez informed the CS he had brought somebody with im, but he did not want the individual, later identified as Edgar Emmanuel Martinez, to listen to the conversations. Valadez explained that he did not want Martinez to know how much as that could result at a disadvantage when conducting future transactions. During the time Valadez was meeting with the CS, agents observed Martinez exiting the Ford Expedition vehicle through the passenger side door with a small white dog. Martinez was observed by agents watching the small white dog as he stood next to the Ford Expedition vehicle. Later that evening, Valadez contacted the CS and stated that he had the money for the five kilograms of cocaine.

On March 27, 2007, the CS received a telephone call from Valadez to meet at the Dolphin Mall in Miami, Florida to finalize the narcotic transaction. The CS, Valadez and Martinez, all meet at the parking lot of the Dolphin Mall. They discussed their plan inside the defendants' vehicle, the white Ford Expedition. The CS asked Valadez if he had the "papers," which was the code word for money. Martinez retrieved a bundle of money from the front passenger area and handed it to Valadez. Valadez then pulled out

another bundle of money from the rear passenger seat. When the CS asked if this was all of the money, Valadez stated the rest of the money was outside in a hidden compartment. The CS, Valadez, and Martinez exited the vehicle and moved to the right rear tire of the vehicle trailer which was being towed by the white Ford Expedition. Valadez and Martinez removed a package from below the trailer. Once the package was removed, Valadez hid the package beneath his shirt and all three parties returned to the vehicle. Once inside the car, the CS asked Valadez how much money was in the package. Valadez stated about fifty with the other bundles of money the total was about sixty. The CS then asked Valadez if he wanted to look at the cocaine and Valadez agreed. Valadez and the CS exited the vehicle and walked over to the CS's vehicle while Martinez stayed with the white Ford Explorer. The CS opened the back compartment of the vehicle and showed Valadez a brown suitcase and when it was opened, Valadez handled a package of sham cocaine. The CS issued the predetermined arrest signal, and Valadez and Martinez were taken into custody for taking possession of ten bricks of "sham" cocaine from the DEA Confidential Source. A total of $62,360 was seized in United States currency.

Subsequent to the arrest, a search of Valadez's person produced three cellular telephones. A search of Martinez's person produced two cellular telephones.

During the post arrest statements, and after being advised of his rights, Martinez stated that he understood his rights, was willing to cooperate and made the following statements:

Martinez stated that Valadez was his employer and would be paid $500 if he traveled with Valadez to help him purchase cars and drive them back to Brownsville, Texas for re-sale. In the evening

hours of March 24, 2007, Martinez and Valadez began their travel from Brownsville, Texas in a Ford F150. However, when they were approaching Crestview, Florida, the vehicle had mechanical problems. Valadez then placed a telephone call to a man, which Martinez believed was Valadez's brother and whose first and last name are unknown to him, that lived in Crestview, Florida. This individual picked up Martinez and Valadez in a Ford Expedition with an attached vehicle trailer. The Ford 150 was secured to the trailer and they all three drove to Crestview, Florida.

Later that morning, on March 24, 2007, they arrived at this individual's home. In the evening, Valadez and Martinez left the home and went to a local club where they met a female. Both defendants spent the night at the woman's home until the later afternoon of March 25, 2007. At that time, Valadez, Martinez and the female ate a meal at a local Chinese Restaurant. Valadez and Martinez drove the female back to her residence and she gave Martinez a small dog. Both defendants then left her home in the white Ford Expedition to Miami, Florida. The defendants arrived in Miami in the evening hours and checked into a Best Western Hotel.

On March 26, 2007, Martinez and Valadez went looking for cars to purchase at auctions. During this time, Valadez received a telephone call. Shortly thereafter, Valadez and Martinez drove to a restaurant near a mall for a meeting. Martinez waited in the car with the small dog while Valadez attended the meeting at the restaurant.

On March 27, 2007, Martinez and Valadez arrived at the Dolphin Mall in Miami in the Ford Expedition with a vehicle trailer in tow. When they arrived at the mall, Valadez asked Martinez to go into the mall to purchase SIM cards. Subsequently, Valadez and Martinez

met with an individual at the mall to discuss the purchase of cars.
During the meeting, Martinez stayed with Valadez and helped Valadez
remove a package of money that remained sealed in duct tape from
the trailer attached to the white Ford Expedition. When the special
agents asked Martinez why the money was wrapped in duct tape, he
stated that "that's how the money comes."

Valadez was read his Constitutional Rights in Spanish on March
27, 2007. Valadez stated he understood his rights and did not wish
to cooperate with agents because he feared his family in Mexico
would be killed. Furthermore, he stated he would, "take it like a
man," and invoked his right to counsel.

Procedural History

The procedural history of the underlying criminal case reveals
that on April 12, 2007, the federal grand jury returned an
indictment charging the movant with conspiracy to possess with
intent to distribute five kilograms or more of a mixture or
substance containing a detectable amount of cocaine, in violation
of 21 U.S.C. §841 (a)(1), all in violation of 21 U.S.C. §846 (Count
One); and attempting to possess with intent to distribute five
kilograms or more of a mixture or substance containing a detectable
amount of cocaine, in violation of 21 U.S.C. §841(a)(1), all in
violation of 21 U.S.C. §846 and Title 18 U.S.C. §2 (Count Two).
(Cr-DE#13).

Thereafter, on June 11, 2007, the movant proceeded to trial.
(Cr-DE#44). Then, on June 13, 2007, the movant was convicted as
charged. (Cr-DE#49).

A PSI was prepared in anticipation of sentencing wherein the
probation officer determined because the movant's offense involved

at least 5, but less than 15 kilograms of cocaine, his base offense level should be 32. (PSI¶21). It was further determined the movant had a total of zero criminal history points and a criminal history category of I. (PSI¶32). Based on a total offense level of 32 and a criminal history category of I, the movant's guideline imprisonment range was 121 to 151 months. (PSI¶60).

On October 9, 2007, the movant appeared for sentencing, wherein the District Court sentenced him to 120 months imprisonment, followed by 5 years of supervised release and $200 special assessment. (Cr-DE#81). The Clerk entered judgment on October 18, 2007. (Cr-DE#83). A timely notice of appeal was filed. (Cr-DE#84). On December 5, 2008, the Eleventh Circuit Court of Appeals, per curiam, in an unpublished opinion affirmed the movant's conviction and sentence. (Cr-DE#101). It appears the movant did not petition for writ of certiorari. The judgment of conviction in the underlying criminal case became final at the latest on March 5, 2008, ninety days after the judgment was issued on direct appeal,[2] when time expired for seeking certiorari review with the Supreme Court. The motion was timely filed less than one year later on July 31, 2009. (Cv-DE#1).

<u>Discussion of Claims</u>

As will be demonstrated in more detail <u>infra</u>, the movant is

_____

[2]The Supreme Court has stated that a conviction is final when a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied. <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321, n.6 (1986); <u>accord</u>, <u>United States v. Kaufmann</u>, 282 F.3d 1336 (11th Cir. 2002). Once a judgment is entered by a United States court of appeals, a petition for writ of certiorari must be filed within 90 days of the date of entry. The 90 day time period runs from the date of entry of the judgment rather than the issuance of a mandate. <u>Sup.Ct.R.</u> 13; <u>see</u> <u>also</u>, <u>Close v. United States</u>, 336 F.3d 1283 (11th Cir. 2003).

not entitled to vacatur on any of the claims presented.[3] When viewing the evidence in this case in its entirety, the alleged errors raised in this collateral proceeding, neither individually nor cumulatively, infused the proceedings with unfairness as to deny the petitioner a fundamentally fair trial and due process of law. The movant therefore is not entitled to habeas corpus relief. See Fuller v. Roe, 182 F.3d 699, 704 (9th Cir. 1999)(holding in federal habeas corpus proceeding that where there is no single constitutional error existing, nothing can accumulate to the level of a constitutional violation), overruled on other grounds, Slack v. McDaniel, 529 U.S. 473, 482 (2000). See also United States v. Rivera, 900 F.2d 1462, 1470 (10th Cir. 1990)(stating that "a cumulative-error analysis aggregates only actual errors to determine their cumulative effect."). Contrary to the movant's apparent assertions, the result of the proceedings were not fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

Specifically, the movant challenges counsel's effectiveness.[4]

_____

[3]Briefly, the evidence against the movant was more than sufficient to support his conviction. The movant has not shown that the result of the trial proceedings, appeal, or sentencing would have been affected had counsel proceeded differently. In other words, no deficient performance or prejudice pursuant to Strickland has been established arising from any of the claims raised in this collateral proceedings, nor has a denial of due process been demonstrated. To the contrary, it is clear after independent review of the record that the movant received a fair criminal proceeding, and that no constitutional violations occurred. Consequently, he has failed to demonstrate that he is entitled to habeas corpus relief in this collateral proceeding.

[4] In all of the claims wherein the movant argues ineffective assistance of counsel, he also raises claims alleging violations of his Sixth Amendment right to due process. These claims, alone, would normally be procedurally barred, however it appears the movant argues that counsel's ineffectiveness constitutes the "cause" for the movant's procedural default. Although counsel's ineffectiveness may satisfy the "cause" exception to a procedural bar, it will only do so counsel's deficiency resulted in a prejudice, thus affecting the outcome of his case. However, because the movant's allegations of ineffective assistance of counsel are without merit, his Sixth Amendment claims are without merit as well.

Ineffective assistance of counsel claims are subject to the
two-part test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668
(1994), which is not a favorable standard to the movant. <u>See
Massaro v. United States</u>, 538 U.S. 500, 505 (2003). To prevail on
a claim of ineffective assistance, a movant must demonstrate both
that (1) counsel's performance was deficient, meaning that it fell
below an objective standard of reasonableness; and (2) the
deficient performance prejudiced the defendant. <u>Chandler v. United
States</u>, 218 F.3d 1305, 1312-13 (11th Cir. 2000)(<i>en banc</i>), <u>cert</u>.
<u>denied</u>, 531 U.S. 1204 (2001) ; <u>Strickland v. Washington</u>, 466 U.S.
668 (1984). Moreover, a habeas court's review of a claim under the
<u>Strickland</u> standard is "doubly deferential." <u>Knowles v. Mirzayance</u>,
____ U.S. ____, 129 S.Ct. 1411, 1418, 173 L.Ed.2d 251 (2009). In
deciding whether counsel's performance was deficient, judicial
scrutiny is "highly deferential" and requires us to "'indulge [the]
strong presumption that counsel's performance was reasonable and
that counsel made all significant decisions in the exercise of
reasonable professional judgment.'" <u>Id.</u> at 1314 (<u>quoting</u> <u>Strickland
v. Washington</u>, 466 U.S. at 689-90.

When assessing a lawyer's performance, "[C]ourts must indulge
the strong presumption that counsel's performance was reasonable
and that counsel made all significant decisions in the exercise of
reasonable professional judgment." <u>Chandler v. United States</u>, 218
F.3d 1305 (11th Cir. 2000)(en banc), <u>cert</u>. <u>denied</u>, 531 U.S. 1204
(2001). The court's role in reviewing ineffective assistance of
counsel claims is not to "grade a lawyer's performance; instead,
[the court] determine[s] only whether a lawyer's performance was
within "the wide range of professionally competent assistance."
<u>Van Poyck v. Florida Dept. of Corrections</u>, 290 F.3d 1318, 1322
(11th Cir.), <u>cert</u>. <u>denied</u>, 537 U.S. 812 (2002), <u>quoting</u>, <u>Strickland
v. Washington</u>, 466 U.S. 668, 690. Review of counsel's conduct is to

be highly deferential. <u>Spaziano v. Singletary</u>, 36 F.3d 1028, 1039 (11th Cir. 1994), and second-guessing of an attorney's performance is not permitted. <u>White v. Singletary</u>, 972 F.2d 1218, 1220 (11th Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight."); <u>Atkins v. Singletary</u>, 965 F.2d 952, 958 (11th Cir. 1992). A claim of ineffective assistance is a mixed question of law and fact. <u>Strickland</u>, 466 U.S. at 698.

The Eleventh Circuit will not "second-guess counsel's strategy." <u>Chandler</u>, 218 F.3d at 1314, n.14. Strategic choices, even those "made after less than complete investigation," are evaluated for their reasonableness and "counsel's reliance on particular lines of defense to the exclusion of others--whether or not he investigated those other defenses--is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable." <u>Chandler</u>, 218 F.3d at 1318 (<u>quoting</u> <u>Strickland</u>, 466 U.S. at 690-91).

The courts "are not interested in grading lawyers' performances;" but rather, "are interested in whether the adversarial process at trial . . . worked adequately." <u>Rogers v. Zant</u>, 13 F.3d 384, 386 (11th Cir. 1994)(quotation marks omitted). To be unreasonable, the performance must be such that "no competent counsel would have taken the action that [the petitioner's] counsel did take." <u>Grayson v. Thompson</u>, 257 F.3d 1194, 1216 (11th Cir. 2001)(emphasis omitted). In other words, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." <u>Rogers v. Zant</u>, 13 F.3d at 386.

Under the second prong of the test set forth in <u>Strickland</u>, the movant can be said to have been prejudiced by counsel's performance only if there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694. Rather, the movant must demonstrate that "there is a reasonable probability that, absent [counsel's] errors, the jury would have had a reasonable doubt regarding [his] guilt." <u>Blackburn v. Foltz</u>, 828 F.2d 1177, 1186 (6th Cir. 1987), <u>cert. den'd</u>, 485 U.S. 970 (1988), <u>see also</u>, <u>Montgomery v. Petersen</u>, 846 F.2d 407, 416 (7th Cir. 1988).

However, it is well-settled that tactical or strategic choices by counsel cannot support a collateral claim of ineffective assistance.  <u>United States v. Costa</u>, 691 F.2d 1358 (11th Cir. 1982); <u>Coco v. United States</u>, 569 F.2d 367 (5th Cir. 1978). Even if such a decision in retrospect appears incorrect, it can constitute ineffective assistance only "if it was so patently unreasonable that no attorney would have chosen it," <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir.), <u>cert. denied</u>, 464 U.S. 1663 (1984), or if the petitioner can demonstrate a "reasonable probability that the verdict [otherwise] would have been different." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 375 (1986).

In **claim one**, the movant asserts he was denied effective assistance of counsel when his attorney failed to aggressively object to the trial court's refusal to sever trial and allow for exculpatory testimony by a co-defendant. (Cv-DE#1:4).

First, as explained in detail with respect to **claim two**, below, this claim was already resolved against the movant on direct

11

appeal and cannot be relitigated in this §2255 motion. The substantive issue underlying this ineffective assistance of counsel claim was raised and rejected on direct appeal.

However, if determined that **claim one** was not previously resolved against the movant on direct appeal, this claim is nonetheless without merit as the movant fails to demonstrate any prejudice suffered therefrom.

In particular, the movant argues that although defense counsel objected to the trial court's refusal to sever trial, he nonetheless feels his counsel failed to fully and aggressively argue the refusal by the court. (Cv-DE#1:6). The movant believes, had counsel "fought harder, refused to let injustice prevail, objected loud enough, hard enough and long enough," the court would have granted the motion to sever trial. (Cr-DE#1:7).

As the movant candidly admits, defense counsel filed a motion for severance once it was clear codefendant, Valadez, would not testify. (Cr-DE#45). The motion for severance, along with the obtained sworn affidavit filed thereafter, laid out what Valadez would have testified had the trial been severed. (Id.; see also Cr-DE#54). The district court thereafter, on the record during trial, denied the motion. Defense counsel then filed a Motion for Judgment of Acquittal and a Motion for New Trial (Cr-DEs#55,56), which were both subsequently denied. (Cr-DEs#57). As is evident, defense counsel was not deficient in trying to assure the movant received a fair trial.

Notwithstanding, if found defense counsel was deficient for failing to "[fight] harder, object[] loud enough, hard enough and long enough," the movant nonetheless has failed to demonstrate

12

prejudice as a result therefrom, in light of the Eleventh Circuit Court's determination that the district court did not commit error in its decision to not sever trial. Moreover, the movant has failed to demonstrate had counsel in fact argued more aggressively or passionately regarding the matter, the result of the district court's decision denying the motion would have been different.

Under these circumstances, no showing has been made that counsel was deficient or that the movant suffered prejudice therefrom. <u>See</u> <u>Strickland</u>, <u>supra</u>.

In **claim two**, the movant argues the trial court erred when it denied the movant's motion to sever trial, thus not allowing exculpatory evidence by his co-defendant. (Cv-DE#1:4).

An issue resolved against a movant on direct appeal cannot be relitigated in a §2255 motion. <u>United States v. Frady</u>, 456 U.S. 152, 166-168 (1982); <u>Dermota v. United States</u>, 895 F.2d 1324 (11th Cir. 1990), <u>cert. denied</u>, 498 U.S. 837 (1990); <u>United States v. Johnson</u>, 615 F.2d 1125, 1128 (5th Cir. 1980); <u>United States v. Kalish</u>, 780 F.2d 506, 508 (5th Cir. 1986). Only if there has been an intervening change in the law can an issue decided on direct appeal be relitigated in a motion to vacate. <u>See generally</u>: <u>Davis v. United States</u>, 417 U.S. 333 (1974). The movant has shown no change of circumstances.

The substantive issue underlying this claim was raised and rejected on direct appeal. In rejecting the claim that the trial court erred when it denied the movant's motion to sever trial, thus failing to allow exculpatory testimony by the co-defendant, the Court of Appeals found as follows:

13

Martinez argues that the district court should have severed the trial to allow him to call Valadez as a witness on his behalf. According to Martinez, Valadez would have testified, *inter alia*, that he never told Martinez about the drugs and that Martinez thought the purpose of the trip was to move cars from Florida to Mexico.

'It is well settled that defendants who are indicted together are usually tried together,' which is 'particularly true in conspiracy cases.' *United States v. Browne*, 505 F.3d 1229, 1268 (11th Cir. 2007). We review the denial of a Rule 14 motion for severance under an abuse of discretion standard. *Id.* This standard requires an appellant to meet the 'heavy burden of demonstrating compelling prejudice from the joinder.' *Id.* (citation and internal quotation omitted). To show that he is entitled to a new trial, an appellant first must 'demonstrate that the joint trial resulted in prejudice to him; and second, must show that severance is the proper remedy for that prejudice.' *Id.*

Where, as here, the motion for severance is based on the defendant's desire for a codefendant's testimony, the 'defendant must demonstrate [to the district court]: (1) a bona fide need for the codefendant's testimony; (2) the substance of the testimony; (3) the exculpatory nature and effect of the testimony; and (4) that the codefendant will actually testify.' *United States v. Leavitt*, 878 F.2d 1329, 1340 (11th Cir. 1989). 'If a showing is made, the district court must then consider the significance of the testimony, the prejudice caused by the absence of the testimony, the timeliness of the motion and the effect on judicial administration and economy of resources.' *Id.*

In *Browne*, the defendants were charged with embezzlement and fraud by abusing their positions in a labor union. *Browne*, 505 F.3d at 1241. Browne moved to sever the trial so that his codefendant could testify that she: 'never discussed the submission of false expense vouchers' with Browne; 'told Browne that her New York trips were related to union business'; [sic] 'did not conspire in any manner with Browne'; [sic] and '[h]ad no evidence or reason to believe that Browne knew she was victimizing the union.' *Id.* at 1269. The district court found 'that the proffered testimony contain[ed] few specific exonerative facts and consist[ed] of undocumented conclusory allegations[,] which mitigate[d] against Browne's severance motion.' *Id.*

We affirmed, noting that the codefendant's proffered testimony was in no way contrary to her own interests. *Id*. at 1270.

Here, Valadez's proposed testimony appears analogous to, and no less self-serving than, the testimony offered in *Browne*. By testifying that Martinez had no knowledge of the drug transaction and that he told Martinez that they were merely buying cars for resale in Mexico, Valadez would have served his own interest by disapproving the conspiracy charge. *See United States v. Pepe*, 747 F.2d 632, 651 (11th Cir.1984)(affirming denial of motion to sever where the proffered testimony 'was of dubious credibility because it was in no way contrary to [testifying co-defendants']own interests"). Valadez's affidavit (providing a glimpse into his anticipated testimony), moreover, contained conclusory statements claiming innocence and lacked any specific and exonerative facts as to Martinez. *See Browne*, 505 F.3d at 1269. Given the usual practice of trying indicted defendants together, especially in conspiracy cases, and a district court's discretion to decide if severance is appropriate, we find no error.

(Cr-DE#101).

Presentation of this claim in this §2255 proceeding in the guise of an ineffective assistance of counsel claim adds nothing of substance which would justify a different result. The claim is procedurally barred. See <u>United States v. Nyhuis</u>, 211 F.3d 1340 (11th Cir. 2000)(Defendant was not entitled to collateral relief based on due process claim that was mere recharacterization of double jeopardy and immunity claim that was rejected on direct appeal), <u>citing</u>, <u>United States v. Rowan</u>, 663 F.2d 1034, 1035 (11th Cir. 1981). A rejected claim does not merit rehearing on a different, but previously available legal theory. <u>United States v. Nyhuis</u>, 211 F.3d at 1343, <u>citing</u>, <u>Cook v. Lockhart</u>, 878 F.2d 220, 222 (8th Cir. 1989). Consequently, the movant is entitled to no relief on this claim.

<u>Conclusion</u>

It is therefore recommended that this motion to vacate be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 5th  date of May, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Edgar Martinez, Pro Se
     Reg. No. 78547-004
     Federal Correctional Institution
     P.O. Box 4200
     Three Rivers, TX 78071

     Anne Ruth Schultz, AUSA
     United States Attorney's Office
     99 NE 4 Street
     Miami, FL 33132

     Roy Altman, AUSA
     United States Attorney's Office
     99 NE 4th Street
     Miami, FL 33132